## EATON v EATON et

Ohio Appeals, 3rd Dist, Paulding Co

No 65.   Decided May 20, 1932

Blachly & Beard for plaintiff in error.
S. W. Ennis, Paulding, and Don C. Corbett, Paulding, for defendants in error.

JUSTICE, PJ.

It is contended that Judge John S. Snook should have sustained the motion for a new trial for the reason that he did not have the power to hear and determine the motion for a new trial and that the only thing he had the right to do, was to grant the motion for a new trial as a matter of course.  In support of this contention, our attention is invited to the case of **Redman v Price Brothers Company, 27 Ohio Nisi Prius Reports (N.S.), 287.**  The syllabus in this case reads as follows:

"A motion for a new trial which involves a consideration of matters not disclosed by the record, such as the manner in which the witnesses testified, their demeanor on the stand and their apparent interest in the case on trial, may not properly be considered by a judge other than the one who tried the case, and where the trial judge died before passing on such a motion, his successor should grant the motion as a matter of course."

Obviously, the Redman case, supra, if fol-

lowed by us, is decisive of the point now under consideration. We, however, are not in accord with the pronouncement made in that case. As we see it, the successor in office of a trial judge, has jurisdiction to pass on a motion for a new trial even if it involves the sufficiency of the evidence, where the motion is not disposed of during the incumbency of his predecessor.

In Benson v Hall, 197 Massachusetts, 517, 83 Northeastern, 1036, it was said:

"On the death of a judge before whom the case was tried, while a motion for a new trial is pending, the motion may be heard and determined by another member of the court, if it is not withdrawn."

In the course of the opinion, the court said:

"It is the defendant's argument, that only the judge who presided could act, and his decease operated as an allowance of the motion. But while the defendant had asked for a review of the trial, and the judge to whom he applied was prevented by death from taking judicial action, the tribunal of which he was a member survived. The discretionary power of the court had been invoked, and if the great advantage which the parties would have derived from being heard by him, had been irretrievably lost, yet the defendant did not withdraw his motion, and until it had been disposed of, the plaintiff could not obtain judgment. In this situation, it was open to either party, to make application for a hearing to the court whose members were severally clothed with the same powers, and who possessed the absolute right to hear, and determine all matters which remained undecided in the case. It was, therefore, within their discretion, as it had been in his, either to grant or to refuse a second trial."

In **Volume 46 Corpus Juris, page 288, §249,** the author said:

"When the judge before whom an action was tried has been succeeded in office by another on account of his death, disability, resignation, or departure from the district, or the expiration of his term of office, or for any other reason, an application for a new trial may, unless otherwise provided by statute, be made to, and determined by, his successor in office or another judge of the same district."

To like import is the holding in Southall v Evans, 43 Lawyers Reports Annotated, New Series, page 468.

In the instant case, Judge Fred L. Hay and Judge John S. Snook were judges of the same court, namely, the Court of Common Pleas; Judge Hay of the Court of Common Pleas of Defiance County and Judge Snook of the Court of Common Pleas of Paulding County. True, Judge Hay's term of office had expired, but the tribunal of which he was a member, survived. He ceased to be a judge but the Court of Common Pleas, over which he presided when a judge, continued to exist and was in existence at the time that Judge John S. Snook passed on the motion in question. In the absence of a showing to the contrary, the presumption arises that Judge Snook had before him on the hearing of the motion for a new trial, a transcript of the testimony taken at the hearing of the case on its merits by Judge Hay. True, Judge Snook did not see the witnesses and therefore could not observe their facial expressions while testifying. But often times this court is asked to reverse a judgment on the ground that the decision or verdict is manifestly against the weight of the evidence. We do not see the witnesses, yet occasionally we do reverse a judgment on the ground that the decision or verdict upon which the judgment is entered, is against the decided weight of the evidence. It is, of course, always desirable that the judge who presided at the trial of the case on its merits, sit and determine the motion for a new trial. He is familiar with the case and obviously is in a better position to rule upon questions raised by the motion than a judge who is a stranger to the action. But oftentimes, in order to protect the rights of litigants and to prevent a failure of justice, it is absolutely necessary for a judge to hear and decide a motion for a new trial in which he did not preside at the trial.

It, therefore, was within the legal discretion of Judge Snook, either to grant or to refuse a second trial. In overruling the motion for a new trial he did not abuse his discretion. Hence, no error, prejudicial to plaintiff in error, has intervened by reason of his ruling in this respect.

Another claim of error pertains to the right of the defendants in error to levy an assessment against the plaintiff in error at all.

The record discloses that the plaintiff in error signed a contract in which he, with others, gave unto the committee in trust, the right to levy an assessment. The record discloses that two assessments in fact were levied, one for $75.00 a crypt and for $80.00 a crypt. The language in the contract creating the committee in trust, uses the words "an assessment." However, the fact that

the assessment is levied in installments, does not make it any the less an assessment. This contention is obviously not tenable.

Another claim of error relates to the state of the pleadings. To the petition, plaintiff in error filed an answer and a cross-petition. His cross-petition prayed for an accounting but at the trial it was abandoned.

In the answer, the defendant, now plaintiff in error, after making certain admissions and denials, averred, in substance that defendant, on the 24th day of March, 1919, agreed to pay an assessment for the purpose of completing said mausoleum; that on or about the 8th day of May, 1919, defendant, pursuant to said agreement, paid an assessment of $225.00 which said assessment was paid in full discharge of his part of said agreement; that said agreement does not authorize any further assessments to be made and that said committee is without authority to make any further assessments pursuant to the terms of the aforesaid agreement. No reply, denying this averment in the answer, was filed. However, on the trial of the case an issue, in fact, was made by the evidence upon this new matter pleaded in the answer, and even if this new matter called for a reply, still the failure to file a reply, in view of the record, as we see it, does not require a reversal of the judgment. In its last analysis, defendant was not pleading payment. His contention or claim was that he had paid one assessment of $225.00; that under the contract, he was to pay an assessment, and, having paid it, the committee in trust, plaintiff below, had no right to further assess him. This, in a way, is the same contention as made by the defendant in his second claim of error, which we have found to be not tenable.

The serious question in this case, as we see it, arises out of the fact that, at the time the contract in question and upon which the suit is bottomed, was signed, it was orally agreed by all of the parties to the contract that certain persons whose names were affixed to the contract were not to be held liable for assessments. There is evidence tending to show that such an oral contemporaneous agreement was made and that the defendant was a party to the oral agreement. Of course, the defendant denies making such an agreement. Thirty five crypts were sold. The defendant had subscribed for three. The assessments were to be made according to the number of crypts held. The trial court refused to receive any evidence of the oral contemporaneous agreement, but it did receive testimony tending to prove that the parties who were excused by the oral contemporaneous agreement from paying the assessment, were insolvent. Now, the query is, did the trial court enter a judgment against the defendant in too big an amount?

If all who signed the contract, were in truth and in fact assessed, then the assessments would be according to the 35 crypts sold. But if the amount of the judgment is based upon 33 crypts, then the defendant is paying more money than he, according to the written contract, agreed to pay by assessment. We glean from the record that the trial court was of the opinion that inasmuch as the two men who were excused from paying assessments, were insolvent, it made no difference whether they were excused or not; collections could not be made, and the assessments should be made against the defendant just the same as if the excused parties had not signed the contract. This is manifestly wrong. The defendant agreed to pay his proportionate share; he did not agree to pay any more; that is, he did not agree, in writing, to do so. We are therefore of the opinion that the judgment as to the amount, is not sustained by sufficient evidence, but is excessive in the amount of $15.00.

There are but four claims of error to which our attention has been invited, in the brief. We are required to consider only the claims of error pointed out and specified in the brief. §12248, GC. This we have done, and, finding none of them well taken, except as heretofore mentioned, the judgment is modified by deducting therefrom the sum of $15.00 and, as modified, is affirmed.

CROW and KLINGER, JJ, concur.